WILLIAM R. SOUTHARD v. MINNEAPOLIS, ST. PAUL & SAULT
SAINTE MARIE RAILWAY COMPANY.[1]

March 5, 1895.

No. 9164.

### Bill of Lading—Issued by Traffic Association.

A traffic association, composed of several carriers, issued a through bill of lading for freight (flour) from Minneapolis to Boston, Mass. (at least), containing a stipulation that in case of loss, detriment, or damage to the flour, whereby liability should be incurred, the carrier alone should be liable in whose actual custody it should be at the time of the loss. *Held*, that the real meaning of the language was that one carrier should not be held liable or responsible for the loss or damage by another. *Held*, further, that under the terms of the bill of lading the shipper was entitled to an uninterrupted, continuous carrier's duty from Minneapolis to Boston, and that the clause in question made the carrier who had transported the freight to a point where another was to assume custody and control a guarantor or surety that the latter would receive, and also made it liable as an actual custodian, notwithstanding the flour had been offered to such connecting carrier, and it had unreasonably neglected or refused to receive it.

### Same—Exemption from Liability.

From unqualified and unrestricted receipts issued by defendant when the flour was delivered to it in car-load lots at Minneapolis, and the bills of lading issued subsequently in lieu of said receipts, it is *held* that the presumption arose that there was no consideration for a stipulation in the bills whereby the association attempted to relieve itself from a carrier's liability in case the flour was lost in transit by fire or other casualty, and therefore such stipulation was not binding.

### Insurance Company—Imposing Terms of Payment.

An insurance company, which by the express terms of its policy has been absolved from liability, and is under no legal obligation to pay a loss, because of a stipulation contained in a bill of lading of the insured property, whereby the carrier liable for the loss is to have the benefit of such insurance, has the right to impose as terms of payment for such loss that it have the unqualified absolute right to proceed against the carrier primarily liable to the insured. Such carrier is not in a situation to complain or object or to demand that he have the benefit of the payment.

[1] Reported in 62 N. W. 442, 619.

On Petition for Reargument.

April 4, 1895.

**Exemption from Liability—Negligence.**

> Where the carriage contract exempts the carrier from liability for loss
> by fire, to enable it to claim such exemption the burden of proof is on it
> to show that the fire was not caused by its negligence.

Action in the district court for Ramsey county to recover damages
for the nondelivery of certain shipments of flour, alleged to have
been delivered by the respective owners to defendant at Minneapolis,
Minnesota, to be carried to certain points in Great Britain, and there
delivered to the order of the shippers.   The complaint further al-
leged that the owners of the flour had respectively assigned to the
plaintiff all their right, title, and interest in and to the same, and
all claim therefor, and on account of the loss thereof.   The case
was tried before Kerr, J., without a jury.   It appeared on the trial
that the flour was delivered to defendant at Minneapolis on different
dates between October 17 and November 4, 1891, by the Northwest-
ern Consolidated Milling Company, and upon delivery defendant
gave to the Milling Company memorandum receipts which were
afterwards canceled, and through bills of lading were issued in lieu
thereof in pursuance of the understanding of the parties when the
receipts were issued.   The bills of lading were issued by a certain
freight traffic association called the West Shore Fast Freight Line,
composed of various railway companies having traffic arrangements
with defendant and the Lehigh Valley Transportation Company, by
which carriers it was authorized to make contracts for through ship-
ment of merchandise from points within their territory to points be-
yond the termini of the railways in the association.   By the terms
of the bills of lading the West Shore Fast Freight Line undertook
to transport the flour from Minneapolis to England by its own and
connecting lines of carriage.   It was the duty of defendant to carry
the flour from Minneapolis to Gladstone, Michigan, and there to de-
liver it to the Lehigh Valley Transportation Company, the next con-
necting carrier.   The flour was so carried by defendant to Gladstone,
and a part of it was duly delivered to the Transportation Company,
but the remainder, being the amount mentioned in the complaint,
was burned while in defendant's warehouse.   Prior to the destruc-
tion of the flour, the bills of lading had been duly transferred by the

shipper to various persons in England, who were respectively the owners of the flour when it was destroyed.    Open policies of insurance to the full value of the flour had been issued before the shipments for the benefit of the owners, who respectively made claim on the insurance company for payment of the loss.    The court found as a fact that unconditional payment was refused by the insurance company on account of the clause in the bills of lading, which is referred to in the opinion, giving the carrier the benefit of the insurance, but that, in view of the fact that the company was thereby absolved from liability, and with a view to maintaining good relations with its customers, it was agreed that the company, through its agent, should advance to the owners respectively an amount equal to the value of the flour destroyed, which advance was denominated by the parties a "loan," and that in consideration thereof the owners should assign to the company, for its benefit, all their right, title, and interest in and to the flour and to damages for its loss; that, as evidence and expression of such agreement, the owners respectively executed receipts for such "loans," stating that the amount thereof was to be refunded out of the amount recovered from the carriers, and also executed assignments; that by the terms of these assignments the owners did "assign, transfer, cede, and abandon" "all our right, title, and interest in and to the property hereinafter specified, and in and to the proceeds thereof, and all that can in any way be made, saved, or realized from the damage or loss resulting from" the fire, "with full power to take and use all lawful ways and means, at your risk and expense, to make, save, and realize the said property or its proceeeds, or any reclamation which may exist or which can be legally made against any person or corporation whatsoever by reason of said loss or damage"; that the name of the assignee was in each case left blank, and the name of the plaintiff was afterwards filled in by the agent of the company who received them for its benefit, and that the company paid the consideration. The owners also testified in their depositions in which the transaction was described that the amount of their claim "was paid" to them by the insurance company.    The other facts are set forth in the opinion.

The court found the facts substantially as above stated, and as a conclusion of law found that the plaintiff was entitled to recover

the sum of $18,740, with interest.   The defendant moved the court to set aside the conclusions of law, and to order judgment in its favor, and, that motion being denied, moved the court to grant a new trial because the findings of fact were not justified by the evidence, and because the conclusions of law and decision were not justified by the evidence or findings of fact, and because of errors of law occurring at the trial.   From an order denying its motions, defendant appealed.   Affirmed.

*A. H. Bright* and *Munn, Boyesen & Thygeson,* for appellant.

The liability of defendant was that of a warehouseman, and the case is governed by Wehmann v. Minneapolis, St. P. & S. S. M. Ry. Co., 58 Minn. 22, 59 N. W. 546.   If defendant was not a warehouseman, then the claim in the bill of lading which provides that the carrier shall not be liable for loss or damage to the property by fire or other casualty while in transit, etc., relieves defendant from liability.   Such clause is valid where the goods are lost without fault of the carrier.   The burden was on plaintiff to show the carrier's negligence.   Whitworth v. Erie Ry. Co., 87 N. Y. 413, 6 Am. & E. R. R. Cas. 349; Lamb v. Camden R. & T. Co., 46 N. Y. 271; Cochran v. Dinsmore, 49 N. Y. 249; Platt v. Richmond R. Co., 108 N. Y. 358, 15 N. E. 393, and 32 Am. & E. R. R. Cas. 517; Louisville & N. R. Co. v. Manchester Mills, 88 Tenn. 653, 14 S. W. 314; Transportation Co. v. Downer, 11 Wall. 129; Clark v. Barnwell, 12 How. 272; Indianapolis Ry. Co. v. Forsythe, 4 Ind. App. 326, 29 N. E. 1138; Davis v. Wabash Ry. Co., 89 Mo. 340, 1 S. W. 327; Little Rock Ry. Co. v. Talbot, 39 Ark. 523, 18 Am. & E. R. R. Cas. 598; Little Rock Ry. v. Harper, 44 Ark. 208, 21 Am. & E. R. R. Cas. 97.   A carrier may, by special contract, exempt himself from liability for loss occurring without his fault.   Christenson v. American Exp. Co., 15 Minn. 208 (270).   The benefits conferred by a through bill of lading are a sufficient consideration for such exemption.   The clause in the bills of lading that the carrier liable for loss or damage shall have the benefit of insurance effected on the property, is valid.   Rintoul v. New York Cent. & H. R. R. Co., 21 Blatch. 439, 17 Fed. 905, and 16 Am. & E. R. R. Cas. 144; Phœnix Ins. Co. v. Erie Trans. Co., 118 U. S. 210, 6 Sup. Ct. 750; Mercantile Ins. Co. v. Calebs, 20 N. Y. 173; Jackson Co. v. Boylston Ins. Co., 139 Mass. 508, 2 N. E. 103; Inman v. South Caro-

lina Ry. Co., 129 U. S. 128, 9 Sup. Ct. 249; Fayerweather v. Phœnix Ins. Co., 118 N. Y. 324, 23 N. E. 192, 1 Am. R. R. & Corp. R. 306. The objection that the insurer, under the terms of the policy, was discharged from liability by reason of the presence of the above clause in the bill of lading, was waived by the insurance company when it paid the money to the insured. Upon the evidence the court erred in finding that this was not full and complete payment; and, if it was payment, defendant is entitled to have it offset against any claim of plaintiff, who is really the insurance company. The assignments give the insurance company no greater rights than it would have had without them, and on payment it would become subrogated to the rights of the insured. Phœnix Ins. Co. v. Erie Trans. Co., supra; Mercantile Ins. Co. v. Calebs, supra. If the transaction between the insurance company and the insured was, as a matter of fact, payment, defendant is entitled to judgment under the terms of the bills of lading. Deming v. Merchants Co., 90 Tenn. 306, 17 S. W. 89; Inman v. South Carolina Ry. Co., supra; Phœnix Ins. Co. v. Erie Trans. Co., supra. The evidence clearly shows that the transaction did amount to payment. Lancaster Mills v. Merchants Co., 89 Tenn. 1, 14 S. W. 317; Deming v. Merchants Co., supra.

*Warner, Richardson & Lawrence*, for respondent.

The plaintiff is entitled to maintain this action. Cremer v. Wimmer, 40 Minn. 511, 42 N. W. 467; Murphin v. Scovell, 44 Minn. 530, 47 N. W. 256; Minnesota T. M. Co. v. Heipler, 49 Minn. 395, 52 N. W. 33. There was no consideration for any limitation of defendant's common-law liability. Domestic S. M. Co. v. Anderson, 23 Minn. 57. Such a condition will not be sustained unless just and reasonable. Railroad Co. v. Lockwood, 17 Wall. 357. The burden is on the carrier to show that it was just and reasonable. York Co. v. Central R. R., 3 Wall. 107; Bissel v. New York R. Co., 25 N. Y. 442; Louisville & N. R. Co. v. Gilbert, 88 Tenn. 430, 12 S. W. 1018. Under the acts of congress, any consideration for a limited liability would have been unlawful. 24 U. S. St. at Large, p. 379; 25 U. S. St. at Large, p. 855; Wehmann v. Minneapolis, St. P. & S. S. M. Ry. Co., 58 Minn. 22, 59 N. W. 546. Where there is a contract of through shipment, the liability of the first carrier continues till the goods

are delivered to the next carrier.   Lawrence v. Winona & St. P. R. Co., 15 Minn. 313 (390); Railroad Co. v. Manufacturing Co., 16 Wall. 318.   An insurance company, in the absence of valid provisions in bill of lading giving the carrier the benefit of the insurance, has, at common law, the right to subrogation.   Hall v. Railway Co., 13 Wall. 367; Liverpool S. Co. v. Phœnix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469.   The transaction between the insurance company and the consignees did not amount to a waiver of its absolute defense to any claim by the owners for loss, or to a voluntary payment of such loss.   Inman v. South Carolina Ry. Co., 129 U. S. 128, 9 Sup. Ct. 249. The course pursued by the insurance company is the one usually adopted to prevent an implication of payment.   Dodge v. Freedman's S. & T. Co., 93 U. S. 379, 385; Fogarty v. Wilson, 30 Minn. 289, 15 N. W. 175; Gulf, C. & S. F. Ry. Co. v. Zimmerman, 81 Tex. 605, 17 S. W. 239.

COLLINS, J.   Counsel for appellant, defendant railway company, when arguing this cause, laid down four distinct propositions as embracing and covering all questions raised by them on appeal.   It was first urged that, as soon as defendant had properly conveyed the flour in question from its shipping point, Minneapolis, Minnesota, to the easterly terminus· of its line of railway, Gladstone, Michigan, and had there tendered it to the next connecting carrier, the Lehigh Valley Transportation Company, and a reasonable time had elapsed for its reception by the latter, defendant's liability as a common carrier ceased, and that of the Lehigh Company· attached.   From that time on the only liability resting on defendant, according to counsel's views, was that of a warehouseman.   The second proposition, dependent upon the soundness of the first, was that, as defendant's liability at the time of the fire was only that of a warehouseman, the burden of proof was on plaintiff to show that the flour was destroyed through defendant's negligence.   The third was that, by reason of a certain clause in the bill of lading or contract for carriage, of which special mention will be made hereinafter, the defendant had been exempted from any liability for loss or damage to the flour occurring without its fault or neglect.   The fourth proposition was also based upon a clause in the bill of lading, it being claimed that by its terms the defendant carrier was entitled to any

insurance effected upon the flour by or in favor of the consignee. The flour having been fully insured, and the insurance company, said by defendant's counsel to be the real plaintiff, having paid the amount of such insurance, it is contended that defendant is entitled to the benefit of such payment.

1. The flour destroyed was part of a much larger quantity delivered to defendant in car-load lots on divers days between October 17 and November 4, 1891. As these car-load lots reached Gladstone the flour was removed from the cars to defendant's warehouse on the dock, there to await the arrival of a vessel belonging to the Lehigh Valley Transportation Company, the next connecting carrier, and these vessels came quite infrequently and irregularly. The result was that the flour, which was in sacks, was not shipped and did not go forward from Gladstone in the order of its arrival there, and a part of every shipment from Minneapolis was destroyed by the fire. In the bill of lading it was stipulated "that, in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation. whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage," and it is on this stipulation, with a certain finding of the trial court, that defendant's counsel rest their first proposition. The finding was that on the arrival of the flour at Gladstone it was offered by defendant to the Lehigh Valley Transportation Company for shipment under the through traffic arrangements between defendant and the company and other connecting carriers, but that prior to and down to the time of the fire—about 10 days after the last car load reached Gladstone—the transportation company had neglected and refused to receive or transport it; that thereupon defendant deposited the flour in its warehouse, on the dock at which the company's vessels landed, and thereafter continued ready to make delivery.

The transportation company had no agent or representative at Gladstone, and all freight to be shipped had to be brought to the attention of the officers of the vessels as they came into port; and it is contended by plaintiff's counsel that, as the evidence conclusively shows that none of the company's vessels came into port dur-

ing the 10 days prior to the fire, the finding was wholly unsupported by evidence. We need not inquire as to this, for, as we construe the stipulation above quoted, the finding is of no value to defendant, as it was not relieved from liability or responsibility as a common carrier by reason of the neglect or refusal of one of its associates in the traffic arrangement to receive and forward the property. Under the terms of the bill of lading the shipper of freight was entitled to an uninterrupted, continuous carrier's duty, at least from Minneapolis to Boston; and the clause in reference to loss, detriment, or damage while in transit cannot be construed as absolving a carrier who actually has the custody of the property from his common-law duty and obligations, because one of his associates in an arrangement for through shipment has unreasonably neglected or refused to receive and forward, for such a construction would permit loss to occur while freight was being transported, as this was, by several carriers, under a through traffic agreement, without a carrier's duty resting upon them at all times. The carrier in possession could escape liability because he had tendered the goods to another, and the latter could escape because he had neglected and refused to become an actual custodian. The shipper would have no means of knowing just where the liability of the carrier, as such, attached, or just when it ended. The fact that part of the flour first shipped from Minneapolis was burned illustrates this. The language in question must be construed as an affirmation or guaranty that there shall continually be a carrier in actual custody, and that connecting carriers will receive at the proper time and place. It makes the carrier who has transported the goods to a point where another is to assume custody and control a surety that the latter will receive. As between the two, we need not determine what the relations may be, but as between the carrier who actually retains custody and the shipper the duty and liability of the former continues. He has not become a warehouseman by the refusal and neglect of another carrier. The real meaning of the language in question is simply that one carrier shall not be held liable or responsible for the loss or damage done by another. It may be well to remark that the bill of lading considered in the case of Wehmann v. Minneapolis, St. P. & S. S. M. Ry. Co., 58 Minn. 22, 59 N. W. 546, a controversy growing out of the same fire, differed essentially from that now before us, which

is for through carriage, and particularly that it contained no language like that just disposed of.

2. Holding, as we do, that the refusal and neglect of the transportation company did not release the defendant from its duties and obligations as a common carrier, renders it unnecessary for us to discuss the counsel's second proposition.

3. In the bills of lading was a stipulation that the joint carrier, the "West Shore Line and its connections, which received said property, shall not be liable for  *  *  *  loss or damage on any article or property whatever by fire or other casualty while in transit, or while in depots or places of transshipment," etc.  By means of this language the carriers made a direct attempt to relieve themselves of their common-law duty and liability, and on this stipulation counsel base their third proposition.  As the flour was delivered in car-load lots to defendant, it issued to the shipper its memorandum receipts for the same.  These receipts were unqualified, and expressed the consideration for the services to be rendered; that is, the rate per 100 pounds for which the flour was to be transported from Minneapolis to various points in Great Britain.  Afterwards these receipts were surrendered and canceled, and the bills of lading issued in lieu thereof.  As the receipts were unqualified in form, they did not contain the language just quoted, nor that previously quoted, limiting and restricting the carrier's duty and obligation in case of loss, detriment, or damage or destruction by fire or other casualty.  Taking the receipts and the bills of lading together, the presumption arises that there was no consideration whatever for the exemption from the common-law liability so plainly attempted in the bills.  In fact, taking them together, it appears that a contract was first made, evidenced by the receipts, whereby the West Shore Line undertook the transportation of the flour unqualifiedly, and without any limitation upon its liability as a carrier, at a certain rate per 100 pounds, and then, taking up its receipts, issued the bills of lading, whereby it stipulated for transportation at the same rate, but exempted itself from the duty and obligation which had before existed.  The rate was not reduced on account of the exemption found in the bills.  No further burden was imposed upon the carrier, and no advantage, legal or otherwise, obtained by the consignor.  The stipulation needed a consideration to

make it binding.   Wehmann v: Minneapolis, St. P. & S. S. M. Ry. Co., supra.   And evidently there was none for the limitations imposed by the bills of lading.

4. In the bills of lading—although not in the receipts, we notice—it was stipulated that in case of loss, detriment, or damage to the flour while in transit the carrier liable for such loss, detriment, or damage should have the full benefit of any insurance which might have been effected on the same.   In the policy of insurance issued to the consignor—some time prior to the delivery of the flour to the defendant—for the benefit of all parties concerned, was a condition "that, in case any agreement be made by the insured with any carrier by which such carrier stipulates to have, in case of any loss for which he may be liable, the benefit of this insurance, then, and in that event, the insurers shall be discharged of any liability for such loss hereunder"; so that, by reason of the stipulation in the bills of lading, the insurance company had been discharged and released from any liability on account of this loss.   It had a complete defense to an action brought on the policy to recover for the value of the flour.   The situation then was that the defendant had become primarily liable for the amount of the loss, while the insurance company had been released and absolved from liability under its policy. This is conceded by defendant's counsel, but it is urged that the objection and defense were waived, and that the subsequent transactions between the owners of the flour and the insurance company amounted to an election on the part of the latter to make unconditional payment, and that, therefore, defendant is entitled to the benefit of the same by reason of the stipulation in the carriage contracts.   We do not consider the transaction between the insurance company and the insured as indicating an intention on the part of the former to waive the condition of the policy, or as showing an election on its part to make unconditional payment.   Such intent or election was expressly repelled by its acts.   It absolutely refused to treat with the owners of the flour, except conditionally, and in a manner which would prevent an imputation to it of any such intent or election.   But it is clear that the insurance company, absolved from payment as it was, and under no legal obligation to pay, had the right to exact such terms with respect to the party primarily liable to the insured as it chose as a condition of pay-

ment. Inman v. South Carolina Ry. Co., 129 U. S. 128, 9 Sup. Ct. 249. This is no new proposition of law, and is distinctly recognized in one of the cases relied upon by defendant's counsel. Lancaster Mills v. Merchants' Cotton Press Co., 89 Tenn. 1, 14 S. W. 317. So that, if we concede the transaction as amounting to payment, it was upon terms which the insurer had a legal right to impose, that it should have the unqualified absolute right to proceed against the party primarily liable to the insured. It follows that defendant, primarily liable, is not in a situation to complain or to object or to demand that it have the benefit of the payment.

Order affirmed.

Upon a petition for reargument the following opinion was filed April 4, 1895:

PER CURIAM. On disposing of a petition for a reargument we will assume, without so deciding, that the trial court found, in substance, that the shipping receipts referred to in the opinion were not the final contract between the parties, but that the obligations and liabilities of the appellant were actually embodied in the subsequently issued bills of lading, thus making the case on this point exactly like that of Minneapolis, St. P. & S. S. M. Ry. Co. v. Home Ins. Co., 55 Minn. 236, 56 N. W. 815. But it does not follow that for this reason the petition must be granted. In writing the opinion, the propositions laid down by the counsel for appellant in their brief were followed and discussed, and the case disposed of without reference to the fact that there was a finding of the court below to the effect that appellant, defendant, had not established by a preponderance of proof that the fire was not caused by its negligence. This finding was warranted by the evidence, as the burden of proof was on the appellant to show that it was not negligent. Arthur v. St. Paul & D. R. Co., 38 Minn. 95, 35 N. W. 718; Hull v. Chicago, St. P., M. & O. Ry. Co., 41 Minn. 510, 43 N. W. 391. A reargument covering the claim that the bills of lading were the final contracts could be of no value to the petitioner. The conclusion reached in the original opinion is adhered to.