(82 Misc. Rep. 475.)

### LEE v. BARRETT et al.

(City Court of New York, Trial Term.   October, 1913.)

INSURANCE (§ 606*)—LOSS OF GOODS—INSURANCE—PAYMENT—LOAN—EFFECT— RIGHT TO SUE.

> Plaintiff's assignor having insured certain goods, which were lost while in the custody of defendants, common carriers, the insurance company gave plaintiff's assignor $733.73, taking a receipt, reciting that the money was received as a loan and repayable only to the extent of any net recovery plaintiff's assignor might make from the carriers for loss of the property, or from any insurance effected by the carriers, and as security for such repayment the recovery was pledged, etc. *Held*, that such payment did not constitute a payment of the insurance, so as to subrogate the insurer to the rights of plaintiff's assignor, and that an action against the carriers was properly brought by plaintiff.

> [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. § 606.*]

Action by Albert R. Lee against Clarence M. Barrett and another, doing business as partners under the firm name of A. J. Barrett & Co. submitted on agreed statement of facts.   Judgment for plaintiff.

Roelker, Bailey & Stiger, of New York City, for plaintiff.
Charles Franklin, of New York City, for defendants.

FINELITE, J.   The action is brought to recover damages for the loss of personal property under a bill of lading.   The defendants are copartners, doing business as common carriers in the city of New York under the firm name of A. J. Barrett & Co.   On January 23, 1913, defendants agreed with one P. C. Kuyper & Co., custom house brokers, of the borough of Manhattan, for a valuable compensation to be paid, to carry a case of dress trimmings from the United States customs appraisers' stores, in the borough of Manhattan, to the E. L. Brady Company, at No. 22 West Thirty-Fourth street, city of New York. The said P. C. Kuyper & Co. were acting as the agents of said E. L. Brady Company.   The goods were the property of the E. L. Brady Company, but said goods have never been delivered to the said E. L. Brady Company, but were lost in transit while in the custody of the defendants.   The said E. L. Brady Company held a policy of insurance, duly issued by the Federal Insurance Company, and the said Federal Insurance Company accepted from the E. L. Brady Company an application for the insurance of the goods herein involved, and the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

said Federal Insurance Company delivered to the E. L. Brady Company on March 25, 1913, a check for $733.73, conditioned upon the giving of a receipt by the E. L. Brady Company, which receipt was given to the said insurance company (and which receipt is hereafter fully set out). The said E. L. Brady Company, after receiving the sum of $733.73, as aforesaid, with the full knowledge and consent and at the request of the Federal Insurance Company, executed and delivered an assignment of its claim against the defendants to the plaintiff herein individually. The invoice and reasonable value of the goods herein involved was at the time mentioned the sum above stated, no part of which had been paid by defendants and which sum had been duly demanded.

The foregoing is, in substance, the agreed statement of facts as agreed upon between the parties hereto and submitted to the court. The most important question involved herein is: Are the moneys, as aforesaid, so advanced to the E. L. Brady Company in full payment of said loss, or was said money so advanced to said E. L. Brady Company by the said insurance company to be considered as a loan to be recovered from said E. L. Brady Company by said Federal Insurance Company at any time upon said receipt? Said receipt, as annexed to the agreed statement of facts and designated as Exhibit C, reads as follows:

"Dated N. Y., March 25, 1913. Received from the Federal Insurance Company $733.73 as a loan, and repayable only to the extent of any net recovery we may make from any carrier, bailee or others on account of loss to our property (described below) by theft from truck, ex Philadelphia from Cherbourg-New York, or from any insurance effected by any carrier, bailee, or others on said property, and as security for such repayment we hereby pledge to the said Federal Insurance Company the said recovery, and deliver to them, duly indorsed, the bills of lading for said property, and we agree to enter and prosecute suit against such railroad, carrier, bailee, or others on said claim with all due diligence at the expense and under the exclusive direction and control of the said Federal Insurance Company. $733.73. Description of property: 1 case laces. E. L. Brady Co. CNW. WR-WE. 24913."

By this receipt it shows that, if the policy of insurance did cover this loss, the said E. L. Brady Company has not been paid for the loss by the insurance company, and therefore the insurance company has not been subrogated to the rights of the E. L. Brady Company. This receipt (Exhibit C) quoted above specifically provides that the advancement of the said $733.73 was a "loan" and "repayable." This form of receipt has been construed by numerous federal authorities as being in the form of a loan and advancement to be recovered back, and does not subrogate the insurance company in place of the person to whom said money had been advanced or loaned. It cannot be construed as a payment for the loss. See Bradley v. Lehigh Valley R. R. (D. C.) 145 Fed. 569, affirmed in 153 Fed. 350, 82 C. C. A. 426; Inman v. Railway Co., 129 U. S. 140, 9 Sup. Ct. 249, 32 L. Ed. 612; Fayerweather v. Phenix Ins. Co., 118 N. Y. 324–327, 23 N. E. 192, 6 L. R. A. 805.

In the last case cited the carrier had issued a bill of lading to the shipper, reserving to the carrier all the rights of the shipper in any

policy of insurance. The policy issued by the insurance company, however, provided that the insurance company should have all the benefit of all claims of the shipper against any carrier. The policy also provided that, in case of any agreement or act by the insured whereby any right of recovery by the insured against any carrier is released, the insurance company should not be bound to pay the loss, and the court said:

"This action is prosecuted by the assured owners to recover from the insurer their loss so sustained; and it is defended on the ground that the owners violated the provision of the contract of insurance."

At page 329 of 118 N. Y., page 193 of 23 N. E. (6 L. R. A. 805), the court further said:

"The plaintiffs in this action expressly stipulated that they would make no agreement, nor do any act whereby their right of action against the carrier * * * should be released or cut off. * * * By the contract entered into between the plaintiffs and the carrier, the rights stipulated for by the insurer have been wholly nullified and cut off, which defeats the plaintiff's right to recover on the policy" (citing Carstairs v. Mechanics & Traders Ins. Co., 18 Fed. 473.

The court further said:

"When goods in the hands of a common carrier for transportation are insured by the owner, and are subsequently lost or injured under circumstances rendering the carrier liable to the owner for the damages and the insurer pays the loss to the owner, the insurer, in the absence of stipulations between the carrier and owner defeating the right, is entitled to be subrogated to the rights and remedies of the owner against the carrier. Hall v. Railroad Co., 13 Wall. 367 [20 L. Ed. 594]; C. F. Ins. Co. v. Erie R. R., 73 N. Y. 399 [29 Am. Rep. 171]; Sheld, on Sub. § 329. But the struggle between carriers and insurers to escape the liability imposed under the usual bills of lading and policies, by casting the burden of the loss upon the other by the insertion of unusual and astute provisions in their respective contracts with the owner, has rendered this simple rule of law quite inapplicable to many of the cases arising under such special contracts."

Reverting to Exhibit C, this form of receipt has received construction in numerous authorities. In Bradley v. Lehigh R. R., supra, the court below, by Adams, J., said:

"It is contended, however, that the transactions between the cargo owners and their insurers subsequent to the loss amount to a payment thereof, and the insurers are thereby estopped from claiming the benefit of the warranty in the policy. It appears that the insured presented a claim to the underwriter and advanced such amount 'as a loan,' taking a receipt showing such fact. * * * This method of dealing has been authoritatively held not to constitute a payment. The Guiding Star [D. C.] 53 Fed. 936, 940; Inman Case, 129 U. S. 128 [9 Sup. Ct. 249, 32 L. Ed. 612]; Judd v. N. Y. Co., 117 Fed. 206, 213 [54 C. C. A. 238]; Pennsylvania R. R. v. Burr, 130 Fed. 847 [65 C. C. A. 331]."

The case of Kalle & Co. v. Morton, 156 App. Div. 522, 141 N. Y. Supp. 374, seems to be in point upon facts almost similar to the case at bar, wherein McLaughlin, J., in writing the opinion, said at page 524 of 156 App. Div., page 375 of 141 N. Y. Supp.:

"There is nothing in the submission to indicate that the insurance company, in advancing the $330, intended thereby to waive any defense which it had, or that such advancement was to be considered as an unconditional payment of

any liability under the policy; on the contrary, the agreement entered into between the insurance company and the shipper, at the time the money was advanced, shows that such was not its intent and it did not so elect. The money was advanced upon certain specified conditions, among which were (a) the presentation of a claim to the carrier for the amount of the loss, and (b) upon receiving payment to refund the same to the insurance company. If it be true, as indicated, that the policy could not have been enforced, then the insurance company had a right to exact such terms with respect to the carrier—that is, the party primarily liable to the insured—as it chose as a condition of payment. Inman v. South Carolina Ry., 129 U. S. 128 [9 Sup. Ct. 249, 32 L. Ed. 612]; Bradley v. Lehigh Valley R. R., 153 Fed. 350 [82 C. C. A. 426]. If it be conceded, as contended by the defendant, that the transaction amounted to a payment by the insurance company so as to relieve it of all liability under its policy, nevertheless it was upon terms which it had the legal right to impose. It, however, was not a payment or a waiver by the insurance company of its defense (Pennsylvania R. R. v. Burr, 130 Fed. 847 [65 C. C. A. 331]; Southard v. Minneapolis, St. P. & S. S. M. Ry., 60 Minn. 382 [62 N. W. 442, 619]."

Defendants cite quite a number of authorities to uphold the contention that it is in all respects subrogated to the rights of the E. L. Brady Company ·to the payment of this money, irrespective of the signing of Exhibit C by the said E. L. Brady Company; but from the examination of the authorities cited by the defendants, which the court has carefully read, they fail to support the contention so made by the defendants.

As to the question whether suit may be brought in the name of the insured or his assignee, it has been held that the insurance company may bring suit in the name of the insured. Hall v. Railway Co., 13 Wall. 367–370 [20 L. Ed. 594]; Carpenter v. E. T. Co., 71 N. Y. 574–579; Steamship Co. v. Cooper, 185 Fed. 733, 741, 108 C. C. A. 71. Therefore I conclude that the liability of the defendants as common carriers is established. The insurance policy did not cover the loss in question. The loss was never "paid" by the insurance company, under the authorities above stated, and the insurance company was not subrogated.

It follows that the plaintiff is entitled to judgment against the defendants for the sum of $733.73, no part of which has been paid by the defendants, together with interest and costs. Submit judgment accordingly.