MERRIMACK MANUFACTURING COMPANY, Plaintiff, *v.* LOWELL TRUCKING CORPORATION, Defendant.

Supreme Court, Kings County, January 27, 1944.

*Bigham, Englar, Jones & Houston* for plaintiff.

*Frederick T. Case* for defendant.

CUFF, J. On this motion by plaintiff to strike out the first and second defenses and part of the fourth in this negligence action, on the ground that they are sham and false in fact, a frontal attack is leveled against that commercial document called the " Loan Receipt ". The facts are as follows: Plaintiff delivered to defendant, a common carrier for hire, merchandise to be delivered to the consignee. While in transit (for the purposes of this motion) the goods were destroyed by fire. Plaintiff having recourse to insurance coverage, received $8,034.78 from the company. As a receipt for the indemnity plaintiff executed and delivered the " Loan Receipt " in question. By its terms plaintiff " borrowed and received " from the Insurance Company of North America, $8,034.78 as a loan, without interest, repayable out of any net recovery that the plaintiff realized by reason of any claim for loss or damage to its described property. As security for such repayment, plaintiff pledged to the insurance company its claim and any recovery thereon. By way of further consideration, plaintiff guaranteed that it had the right to enforce the damage claim and appointed irrevocably the insurance company agent and attorney in fact to dispose of the matter by suit or settlement in its or the carrier's name, but at the latter's expense, and promised to execute all papers needed to effect the purposes of the agreement. Also, plaintiff agreed to refund the money received if the goods were finally delivered to the consignee.

The defenses (first and fourth), which plaintiff would eliminate, allege that plaintiff is not the real party in interest. Defendant evolves that theory of avoidance by reasoning that plaintiff having been paid in full by its insurance company and having executed the " Loan Receipt " (regardless of its terms), has actually assigned its claim against defendant to that insurance carrier; that it has no further interest; that the " Loan Receipt " is a subterfuge.

The " Loan Receipt " is a device by the use of which insurance may be paid to avoid some of the consequences of subrogation. Whatever reasons there may be of a business character for the insurance company shying away from subrogation, there is one of great significance which manifests itself when the contracting parties appear before a court and jury. Insurance companies by experience find that when their financial interest is discovered by a trial jury in a suit, they fare not so well. In

their reluctance to reveal their presence in litigation, insurance carriers do not stand alone. The courts have decided times without number that the unnecessary disclosure to the jury of the presence of a liability insurance company in a negligence trial warrants a mistrial; when selecting the jury in negligence cases, the fact of liability insurance in the suit may not be brought to the jury's notice and only certain limited questions defined by the Legislature (Civ. Prac. Act, § 452) calculated not to reveal the fact, may be asked.

Many trials have their moments when the words " insurance company " have either been mentioned, inferentially suggested or in some form disturbed the impartial composure of the courtroom, where fair play is necessarily the wholesome atmosphere. Sensitive to the effect of that information falling upon the ears of the jurors, the court often ponders upon its own motion what action to take. Times are when counsel are rendered mute by the unexpected incident. The attorney affected detrimentally, satisfied to risk his chances on the evidence in the case, hesitates to speak lest his request be denied and that which was only suggested be projected with all of its force to influence the jury; he fears to allot something to the plaintiff, based on the convenient premise which disregards evidence " it will not hurt the defendant and that insurance company will never feel it."

That the disclosure of the fact of insurance in a case is a disadvantage to one side is, if this court's observations have been accurate, universally understood by experienced trial lawyers. Divulgence of the fact by accident or design has been guarded against by trial judges over many years and the vice of letting the jury know about it has, to a degree, statutory recognition (Civ. Prac. Act, § 452).

Those who devised the " Loan Receipt " which permits the insurance company to speedily pay its insured and yet press in court to recoup its losses from the wrongdoer without the company appearing by name, trying in that way to avoid unmerited disadvantages difficult to surmount, were not unrealistic. Defendant's attorney declares that the fears of his adversary about the attitude of juries toward insurance companies, are unfounded. He states that his representation of insurance carriers has been of long duration and openly avowed. He implies that although the juries knew that his insurance company clients were involved, those clients have not been ill-treated. Counsel's view that juries do not on occasion make distinctions not warranted by evidence, cannot be shared by this court despite this court's enthusiasm for the trial by jury as an effective agency of justice. Counsel's accomplishments under the

circumstances ornament his brilliant record as a practitioner of which this court has personal knowledge.

Should the court upon piercing the mantle of the " Loan Receipt " and discerning its clear objective, enforce the letter of section 210 of the Civil Practice Act, and thus condemn the practice of using loan receipts?

Business men endeavor, by the use of the " Loan Receipt ", to accelerate payment of insurance claims so that industry will not be stifled for the want of goods or the money equivalent while responsibility for torts related to the payment is being determined. The first (payment of claim) can and should be disposed of with celerity because the loss ordinarily fixes liability and decides all questions. The second (determining responsibility for the tort) may be speeded only at the expense of justice. Withholding indemnity from the insured pending determination of litigation might force a settlement based, not upon the merits of the claim, but upon the need for funds. That practice penalizes the poor. It would seem that the " Loan Receipt " fills a needed dual capacity.

Of course, business, to accomplish a desired result, may not defy law no matter how meritorious the trade attainment may be. On the other hand, legislative enactments should not be regarded as instrumentalities designed to impede and obstruct proper business intercourse. Courts should upset proper business practices only in the furtherance of justice lest its effect be to discourage trading — the lifeblood of the republic.

What is wrong with the " Loan Receipt "? The objection raised to its use emanates from the alleged wrongdoer. He insists on being confronted in court by the person, who at the time the suit is started, he considers, in fact, possessed the claim against him. Section 210 of the Civil Practice Act, a sound preventive against paying claims twice, justifies defendant's attitude on this motion. His complaint would find immediate redress if there were fear that a second claim could be urged for the one wrong. The " Loan Receipt " admits of no such injustice. The objection narrows merely to the name of the party in the suit. Defendant's attorney argues that his client should defend against an insurance company by name. The unwillingness of the insurance company to litigate in its own name is prompted by a firm conviction that an unfair verdict may result. Courts expend great effort to avoid unfairness, a destructive element in the administration of justice. Conscious of the possibility of a pending injustice, a court should not denounce a method devised to remove the cause which prejudices not at all the rights of anyone.

It is this court's conclusion that there is nothing devious about the "Loan Receipt". The decision in *Purdy* v. *McGarity* (262 App. Div. 623) to the contrary has not been overlooked.

Plaintiff's agreement with its insurance company was "*a loan, repayable only in the event and to the extent that a recovery might be had from the wrongdoers.*" (*Adler* v. *Bush Terminal Co.*, 161 Misc. 509, affd. 250 App. Div. 730. Italics supplied.) "It cannot be construed *as a payment* for the loss." (*Lee* v. *Barrett*, 82 Misc. 475, 478. Italics supplied.) Cases holding otherwise were not transactions involving a transportation contract, if that should alter the situation. *Purdy* v. *McGarity* (*supra*) involved a property damage claim resulting from the collision of two insured automobiles. "Where * * * plaintiff merely has received loans for the amount of her loss," said the court in *Balish* v. *Advance Fuel Oil Corp.* (266 App. Div. 683), "as evidenced by *loan receipts* providing that the loans were repayable out of any moneys received by the plaintiff on account of her loss, the insurance companies *are not subrogated* to plaintiff's claim against defendant". (Italics supplied.) The "Loan Receipt", as such, has won approval in the Federal courts often and has been held to be evidence of a loan — not an assignment or payment — which did not give rise to subrogation rights. (*Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S. 139, 148; *Bradley* v. *Lehigh Valley R. Co.*, 145 F. 569, 573, affd. 153 F. 350; *Inman* v. *South Carolina Ry. Co.*, 129 U. S. 128, 140.)

There being no danger of more than one recovery against the wrongdoer, the court is not justified in inquiring into the motives of the parties to the "Loan Receipt".

The Court of Appeals' (no opinion) decision (*Cocoa Trading Corp.* v. *Bayway Terminal Corp.*, 290 N. Y. 697) is not a holding that the "Loan Receipt" is something different than appears upon its face, as is revealed by its *Per Curiam* decision on the motion for reargument (290 N. Y. 865), wherein that court stated that its original decision was based upon a record which did not fully present the question of the meaning to be accorded the "Loan Receipt".

The plaintiff did not assign its claim to its insurance company. It has not been paid. Section 210 of the Civil Practice Act has no application. Plaintiff is the real party in interest. The first and fourth defenses are stricken as sham. The third defense is also stricken, because condition (6) found on the back of the policy voids the insurance if it enures "directly or indirectly to the benefit of any carrier * * *."

The motion of plaintiff is granted.