NATIONAL UNION FIRE INSURANCE COMPANY
v. GORDON E. GRIMES.

153 N. W. (2d) 152.

September 8, 1967—No. 40,413.

*Mordaunt, Walstad, Cousineau & McGuire,* for appellant.
*Rodney G. Grimes,* for respondent.

SHERAN, JUSTICE.

The appeal is from a judgment of the municipal court of Hennepin County.

Action was started by the National Union Fire Insurance Company to recover from defendant $970.20 because:

(a) It paid this amount to defendant, its insured under a policy of insurance affording "medical expense coverage."

(b) Defendant thereafter received $3,500 in settlement of his claim against the person who caused the injuries making necessary the medical payment.

(c) The policy pursuant to which the medical expense was paid entitles plaintiff to reimbursement by defendant from the proceeds of the settlement.

Defendant, by answer, asserts that no part of the $3,500 received by him was on account of the medical expense and, in any event, the provision of plaintiff's policy relied upon by it is contrary to the public policy of the State of Minnesota. In addition, defendant pleads that any claim plaintiff might otherwise have as against defendant was compromised and released prior to the commencement of this action.

The case was submitted to the trial judge for decision upon this stipulation of facts:

In May 1960 plaintiff issued to defendant a policy of automobile insurance effective for the period from May 23, 1960, to November 23, 1960, which included medical-expense coverage obligating plaintiff to pay to defendant medical expenses caused by accident involving the automobile. The policy contains these provisions now significant:

"Subrogation * * *: In the event of any payment * * * under Part II of this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

"In the event of any payment under the medical expense coverage of

this policy, the company shall be subrogated to all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization and such person shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing after loss to prejudice such rights."

The next provision:

"Assistance and cooperation of the insured:

"The insured shall cooperate with the company and upon the company's request, assist in making settlements in the conduct of suit and enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury and property damage with respect to which the insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payments, assume any obligation or incur any expense other than for first aid to others at the time of the accident."

On September 1, 1960, defendant had an accident involving the vehicle covered by his policy and another automobile driven by one Sig Stanek. As a result, defendant sustained personal injuries and incurred medical and hospital expense. The bills for these expenses, totaling $970.20, were submitted to plaintiff for payment in accordance with the policy issued by it. Defendant executed plaintiff's form captioned "Medical Payment Receipt and Release." It is dated December 2, 1960, and provides in part:

"* * * I hereby release and discharge the National Union Fire Insurance Company from any and all liability, to date of this release only, whatsoever under the Medical Payments Section of Policy No. SX 41838, issued to Gordon E. Grimes by the National Union Fire Insurance Company, on account of an accident occurring on or about 1st day of September, 1960 resulting in injuries to my person."

On December 12, 1960, plaintiff issued its draft to defendant in the amount of $970.20.

On January 31, 1961, plaintiff advised defendant that it was claiming subrogation rights under its policy and requested him to execute a subrogation agreement and receipt. Defendant refused to sign the subrogation agreement upon advice of counsel and informed plaintiff that defendant would not reimburse plaintiff out of any settlement or verdict obtained from the insurance carried by Stanek.

By letters dated January 27, 1961, and March 1, 1961, plaintiff notified the Miller Mutual Insurance Company, liability carrier for Stanek, of its alleged interest and of its intention to assert its subrogation claim.

On or about October 31, 1962, defendant settled his liability claim against Stanek for the sum of $3,500 paid to him by the Miller Mutual Insurance Company and executed and signed an unrestricted general release providing in part as follows:

"* * * I Gordon Grimes * * * do hereby release, acquit and discharge the said Sigmund J. Stanek from all claims and demands, actions and causes of action, damages, cost, loss of service, expenses and compensation on account of, or in any way growing out of bodily injuries and property damage resulting or to result from accident that occurred on or about the 1st day of September, 1960, * * * and do hereby * * * covenant * * * to indemnify and save harmless the said Sigmund J. Stanek from all claims and demands for damages, costs, loss of service, expenses, or compensation on account of, or in any way growing out of said accident or its results, both to person or property."

Defendant received and negotiated the Miller Mutual Insurance Company draft in the amount of $3,500. He has refused to reimburse plaintiff and still refuses despite numerous requests for payment.

The parties also stipulate that the subrogation clause concerning medical payments as it appears in the insurance policy here in issue was approved by the office of the insurance commissioner when it was filed by the Minnesota Rating Bureau on behalf of National Union and other companies in 1959.

The trial court made findings of fact and conclusions of law and

ordered that judgment be entered for defendant upon the ground that the policy provision relied upon by plaintiff for recovery constitutes an invalid attempt to assign a cause of action for personal injury.

The decision of the trial court was based upon decisions of the Minnesota Supreme Court holding that a cause of action for personal injuries is not assignable. See, Leuthold v. County of Redwood, 206 Minn. 199, 288 N. W. 165; Hammons v. G. N. Ry. Co. 53 Minn. 249, 54 N. W. 1108; Boogren v. St. Paul City Ry. Co. 97 Minn. 51, 106 N. W. 104, 3 L. R. A. (N. S.) 379. In addition, the trial judge considered decisions of other jurisdictions dealing specifically with policy provisions of the kind here involved: Peller v. Liberty Mutual Fire Ins. Co. 220 Cal. App. (2d) 610, 34 Cal. Rptr. 41; Damhesel v. Hardware Dealers Mutual Fire Ins. Co. 60 Ill. App. (2d) 279, 209 N. E. (2d) 876; Smith v. Motor Club of America Ins. Co. 54 N. J. Super. 37, 148 A. (2d) 37, affirmed, 56 N. J. Super. 203, 152 A. (2d) 369; Travelers Ind. Co. v. Chumbley (Mo. App.) 394 S. W. (2d) 418. Another case dealing with this subject is Harleysville Mutual Ins. Co. v. Lea, 2 Ariz. App. 538, 410 P. (2d) 495.

If the present action were one in which plaintiff was attempting to assert a claim for the medical expenses paid by it against the tortfeasor who caused the injuries, the rules forbidding the assignment of claims for personal injuries might be applicable. But this is not such a situation and we need not anticipate it. No suit by an assignee is involved. Here the insurer is making a claim for reimbursement as against the insured for money advanced for the payment of medical expenses upon the ground that the insurance contract obligates the defendant to repay the insurer if and when he recovers from the person who caused the damage. It is clear that the intendment of the contract is to that effect. We do not see any consideration of public policy which precludes the making of such an agreement.

The parties have stipulated that defendant wished to obtain a policy of automobile liability insurance with medical-payment coverage at a premium lower than that generally available. It seems reasonable to assume that the subrogation provision contained in this policy could result in a reduced premium. We think that unless there is a clear public

policy to the contrary, a prospective insured should be free to secure insurance at the lowest possible premium available for the kind of coverage that satisfies him. See, Bernardini v. Home & Auto. Ins. Co. 64 Ill. App. (2d) 465, 212 N. E. (2d) 499; Miller v. Liberty Mutual Fire Ins. Co. 48 Misc. (2d) 102, 264 N. Y. S. (2d) 319; Travelers Ins. Co. v. Lutz, 3 Ohio Misc. 144, 210 N. E. (2d) 755; Michigan Medical Serv. v. Sharpe, 339 Mich. 574, 64 N. W. (2d) 713. And apparently the Department of Insurance finds no objection to provisions of the kind here involved because, as stipulated by the parties, the subrogation clause was approved by the office of the insurance commissioner when it was filed by the Minnesota Rating Bureau on behalf of plaintiff company and others. See, Smith v. Motor Club of America Ins. Co. *supra.*

Although it was claimed initially by defendant in his answer that the subrogation provisions of the policy were inserted either because of misrepresentation or mutual mistake, there was no attempt to prove this to be the case, and at trial the attorney for defendant stated:

"* * * [T]he defendant will not offer any evidence on the issues of mutual mistake or misrepresentation as set forth in the answer."

Defendant argues that the general release signed by him is not a bar to recovery by National Union as against Stanek or his liability insurer and that the release did not prejudice any right plaintiff may have had against the tortfeasor in the event any claims were made against it by others on account of the accident.

If the release had stated specifically that no part of the consideration represented compensation for medical expenses incurred by the injured person, a different inference might be possible. But it is clear to us that the parties understood that claims for medical expense incurred on account of the accident were included in the settlement.

Defendant claims that plaintiff released or waived any rights it might have had against defendant by taking the receipt and release agreement entered into December 2, 1960. In Weaver v. New Jersey Fidelity & Plate Glass Ins. Co. 56 Colo. 112, 136 P. 1180, 51 L. R. A. (N.S.) 414, the court held that payment of the loss to the insured ·despite

knowledge of the fact the insured had settled previously with the wrong-doer was an act inconsistent with subrogation and constituted a waiver of rights as against the insured. The difference between that case and this one is this: Here the settlement with the tortfeasor was made *after* the money was received under the medical-payment coverage. In our opinion there was nothing about the payment by the insurer or the language of the release of December 2, 1960, which could be construed as a waiver of the insurer's right to reimbursement for medical expenses advanced.

Neither do we feel that the assertion by National Union of its claim against the tortfeasor prior to the settlement constitutes an impropriety or a waiver of its right to reimbursement as against defendant after the settlement between defendant and the tortfeasor was completed.

Defendant is entitled to offset against the $970.20 received by him from plaintiff the reasonable worth and value of the efforts expended and expenses incurred by defendant properly chargeable to that portion of the recovery from Stanek attributable to these medical expenses. See, Hayward v. State Farm Mutual Auto. Ins. Co. 212 Minn. 500, 4 N. W. (2d) 316, 140 A. L. R. 1236; Blair v. Espeland, 231 Minn. 444, 43 N. W. (2d) 274; Flor v. Buck, 189 Minn. 131, 248 N. W. 743. The amount of such an offset is for determination by the trial court.

Reversed and remanded.