BENEDICT GATTORNA, Plaintiff-Appellant, *v.* AMERICAN STATES INSURANCE COMPANY, Defendant-Appellee.

Second District   No. 83—368

Opinion filed March 19, 1984.—Rehearing denied April 18, 1984.

Gary V. Johnson, of Clancy, McGuirk & Hulce, P.C., of St. Charles, for appellant.

Jay H. Tressler and Francis A. Spina, both of McKenna, Storer, Rowe White & Farrug, of Wheaton, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Benedict Gattorna, appeals from an order of the circuit court of Kane County which granted summary judgment in favor of defendant, American States Insurance Company, in connection with plaintiff's suit to recover for hospital, funeral and medical expenses incurred as a result of an automobile accident in which the plaintiff's daughter suffered fatal injuries. Plaintiff contends that summary

judgment was improperly entered, as the settlement of the wrongful death claim growing out of the accident did not prejudice defendant's subrogation rights. Defendant, in support of the judgment, counters that plaintiff was not in any event personally entitled to receive payment under the policy.

We reverse.

Prior to the automobile accident involved in this case, the defendant issued plaintiff a policy of automobile insurance under which plaintiff was the named insured. A special endorsement to the policy provided that coverage was also extended to the plaintiff's daughter, Amy Gattorna. On July 26, 1979, a date by which Amy Gattorna had reached the age of majority, she was involved in an automobile accident while a passenger in a vehicle driven by Mary Ellen Weisschnur. Amy Gattorna was seriously injured in the accident and died three days later.

On August 21, 1979, St. Charles National Bank, as administrator of the estate of Amy Gattorna, commenced suit against the drivers of the vehicles involved in the accident to recover damages for wrongful death and personal injuries. On April 11, 1980, the bank, acting as administrator of the estate, entered into a "Covenant Not to Sue" with Mary Ellen Weisschnur whereunder the latter was released from further liability for consideration of $50,000. The parties agree that nothing in the record on appeal indicates that Weisschnur or her insurer were aware of any subrogation interest which the defendant might have concerning the estate at the time the covenant was executed.

The plaintiff thereafter filed a three-count complaint against the defendant. In count I, the plaintiff sought to recover $12,558.71 under the terms of the automobile insurance policy, which amount represented medical and funeral expenses incurred by plaintiff on his daughter's behalf. Counts II and III sought recovery of punitive damages and attorney fees on account of defendant's alleged vexatious and unreasonable conduct. The defendant filed an amended answer which raised by way of affirmative defense that the execution of a general release in favor of Mary Ellen Weisschnur had prejudiced the defendant's subrogation rights, barring the plaintiff from recovering any medical expenses otherwise payable under the terms of the insurance policy. It was on the basis of the plaintiff's acceptance of payment in consideration of the release, and the alleged attendant prejudice to the defendant's subrogation rights that the defendant filed its first motion for summary judgment. That motion was denied, and defendant filed a second motion which alleged that, based upon the plaintiff's answers to interrogatories, substantial portions of the

claimed expenses had been paid for by the bank as administrator of Amy Gattorna's estate and by insurance, so that only $175 of the bills had been paid by plaintiff. The defendant claimed that the "Other Insurance" clause of the policy precluded the plaintiff's further recovery. The motion additionally repeated the defendant's argument concerning the impairment of its subrogation rights, and questioned the plaintiff's right to receive payment under the insurance policy.

The court found that the plaintiff was not entitled to recovery for the amounts claimed "inasmuch as he was not an injured party and further owed no legal duty to pay for the expenses of the injured party ***." The defendant's motion for summary judgment was accordingly granted, and this appeal followed.

Two issues are presented: (1) Whether plaintiff, as named insured under the policy, was personally entitled to receive payment for the medical and funeral expenses of his daughter, who had attained majority, and (2) Whether settlement and release of the tort claims arising from the fatal accident operated to prejudice the insurer's rights of subrogation, barring plaintiff's recovery.

We begin with a review of the grounds articulated by the trial court for the award of summary judgment: that plaintiff, who was neither the injured party nor who owed a legal duty to pay for the expenses at issue, was not entitled to recover under the policy for his daughter's medical and funeral expenses. In this regard, the plaintiff asserts a right to recover under the language of his policy and denies the applicability of any of the policy's limits of liability.

Plaintiff's claim in this case arises under the basic personal injury protection and excess personal injury protection coverages of his policy. The basic coverage provided payment of medical, hospital and funeral expenses "to or for the benefit of the injured person ***" while excess coverage would make payments "to or for the benefit of the named insured and any relative who sustains bodily injury caused by an accident involving a motor vehicle ***." Under each coverage, identical definitions were given of the terms "named insured" (the individual named in the declarations including his spouse if a resident of the same household), "relative" (a relative of the named insured who is a resident of the same household) and "bodily injury" (bodily injury, sickness or disease, including death at any time resulting therefrom). The term "injured person" included under each coverage the named insured or any relative who sustained bodily injury in any motor vehicle accident.

Plaintiff contends that as the purchaser and named insured under the policy, he is entitled to the payments set out under the basic and

excess personal injury protection coverages for his daughter's medical and funeral expenses. He relies upon the provision in the basic coverage that payment will be made "for the benefit of the injured person" and the provision in the excess coverage that payment would be made "to or for the benefit of the named insured and any relative who sustains bodily injury." Since the expenses at issue were incurred in the medical treatment of the injured party and in paying her funeral expenses, plaintiff concludes that those expenses were made for her benefit and must be reimbursed under the terms of both coverages.

Defendant does not dispute that medical and funeral expenses are reimbursable under the automobile insurance policy. It does, however, contest plaintiff's entitlement to payment for those expenses. It denies that plaintiff's status as purchaser or named insured under the policy vested him with any right to payment on the facts of this case. In defendant's view, any medical and funeral expenses were incurred either by Amy Gattorna or by her estate. In essence, the insurer claims that its duty to pay benefits "for the benefit of" the injured person is the obligation to make payments to a deceased person's estate or personal representative, not an obligation to reimburse the injured party's relatives for voluntary payments they may have made on the injured person's behalf. The defendant claims that a person in the latter category lacks contractual standing to claim reimbursement notwithstanding his status as purchaser or named insured of the policy.

Generally, an accident insurer is liable under a policy only to the person therein designated as beneficiary. (*Kitchen v. North American Accident Insurance Co.* (1954), 2 Ill. App. 2d 23.) The terms of a policy providing personal injury protection coverage (PIP) may in certain circumstances be affected by representations made by the insurer in promotional materials purporting to describe the available coverage (*cf. Foster v. Crum & Forster Insurance Cos.* (1976), 36 Ill. App. 3d 595) (two separate renewals of policy containing restrictive language negated contention that promotional material broadened policy's terms), but no such contention has been advanced in the case at bar. Rather, the controversy here arises because the policy provisions regarding PIP coverage do not explicitly identify the beneficiary in the event that a covered relative of the named insured sustains fatal injuries during the policy term.

In our view, the provision that payment will be made for the benefit of the injured person simply does not equate with language restricting such payments to the injured person's estate. Moreover, notwithstanding the lack of a legal obligation under the family expense

statute (Ill. Rev. Stat. 1981, ch. 40, par. 1015) to pay the expenses of a child who has reached majority, the concept of the named insured's obligation to pay expenses is not, even by implication, a condition of entitlement to benefits under the policy. Although defendant on appeal claims that the plaintiff has tried to bootstrap himself into the position of one who has incurred expenses for a child who had attained majority, it fails to suggest why the medical and funeral expenses of such a child actually incurred by the parent should be less payable under the terms of the policy than expenses for which a parent is legally liable under the family expense statute. Even in the absence of legal obligation, a parent may well contemplate being asked to undertake responsibility for a child's emergency expenses and undertake to insure himself against this risk. We believe that a payment made by a parent under such circumstances is one "for the benefit of the injured person." Further, the "for the benefit of the injured person" language appears to contemplate direct payment by the insurer to providers of services for the injured person. If such amounts are payable under the policy, we can see no reason why a parent who has made initial payment to the provider cannot be paid directly.

A contrary result, under which payment would be made to the estate, would subject the proceeds of the policy to the general claims of the estate's creditors and in some circumstances might result in there being insufficient money available to cover all losses against which the parent had sought to insure himself. In addition, the parent would be required to expend the necessary time, effort and resources needed to file a claim against the estate. Such measures should be unnecessary to collection of proper benefits under a policy of insurance. At a minimum, we find the policy ambiguous as to the plaintiff's entitlement to proceeds, warranting resolution of the ambiguity against the insurer. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1.) We, therefore, conclude that the trial court erred in granting the defendant's renewed motion for summary judgment.

The defendant further maintains that the plaintiff's recovery is barred in consequence of the settlement arrived at between the administrator of Amy Gattorna's estate and Mary Ellen Weisschnur. The defendant contends that this release precluded it from proceeding as subrogee to seek recovery from the tortfeasor for any amounts it might pay to Amy Gattorna's estate. As a result of this violation of the subrogation clause of both basic and excess PIP coverages, the defendant concludes that it was entitled to summary judgment as to the plaintiff's claim.

The plaintiff counters that no right of the defendant has been prejudiced since the defendant has as yet made no payment under the policy. Asserting that the right of subrogation does not accrue until the insurer actually makes payment (*Village of Crainville v. Argonaut Insurance Co.* (1980), 81 Ill. 2d 399), the plaintiff asserts that there are no subrogation rights existing in favor of the defendant to be prejudiced by the settlement. Plaintiff also claims that no conduct attributable to him can be held to have prejudiced the defendant's rights where the settlement was made by the Bank of St. Charles as administrator of the estate. Plaintiff further claims that summary judgment was improper on this issue in the absence of any indication that the tortfeasor or her insurer were aware of the defendant's subrogation interest prior to the issuance of the release.

■ We first address the claim that no subrogation rights can exist where no payment has occurred. Both basic and excess coverages provide that in the event of any payment, the insurer is subrogated to the rights of any person to or for whom such payment is made. Further, such person "shall do nothing after loss to prejudice such rights." This language does not require that a right to subrogation presently exists, and plaintiff's construction appears to conflict with the language of the subrogation clause that nothing shall be done "after loss" to prejudice the rights of the insurer. We therefore resolve this facet of the plaintiff's argument against him.

■ The plaintiff further claims that he may not be charged with having prejudiced the defendant's subrogation rights inasmuch as the settlement and release were executed by the administrator of his daughter's estate. The defendant protests the incongruity of any analysis which might allow the plaintiff to recover from it under the policy yet deny it subrogation on account of the administrator's execution of a release. However, the subrogation clause merely provides that the person "to or for whom" any payment under this coverage is made "shall do nothing after loss to prejudice" the insurer's subrogation rights. The language of this clause does not make plaintiff's entitlement to benefits contingent upon the conduct of the deceased's personal representative, and defendant's motion for summary judgment did not suggest in any way that the plaintiff was responsible for procuring the release. We therefore conclude that the award of summary judgment in favor of the defendant may not be sustained on the basis of an alleged violation of the policy's subrogation clause.

It is appropriate in this connection to discuss the case of *Estate of Woodring v. Liberty Mutual Fire Insurance Co.* (1979), 71 Ill. App. 3d 158, relied upon by the plaintiff. In *Woodring*, the court found that

the estate of a minor child was separate from the parents, who were primarily liable for the child's expenses. Thus, where the parents had paid the expenses, the insurer was not entitled to subrogation against the proceeds of a settlement entered into by the child's estate. (*Cf. Powell v. Inghram* (1983), 117 Ill. App. 3d 895 (*Woodring* distinguishable when child attains majority before completion of medical treatment at which time, as a named insured of policy, child directed insurer to pay medical expenses and agreed to reimburse them from any judgment received).) The question of whether a settlement by one of the entities could ever be attributed to the other was not involved.

█ █ Finally, the parties agreed that it is unclear from the record whether the third-party tortfeasor or her insurer were aware of the defendant's possible subrogation interest at the time of the settlement. In Illinois, the general release of a tortfeasor does not bar a subrogation action against the latter by the victim's insurer where the tortfeasor or his insurance carrier had knowledge of the insurer-subrogee's interest prior to the release. (*Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210; *Country Mutual Insurance Co. v. Transit Casualty Co.* (1978), 59 Ill. App. 3d 283.) The defendant takes the view that no fact question can be found in this regard since the record is silent on the question of the tortfeasor's knowledge. Defendant relies upon *Wooding v. L & J Press Corp.* (1981), 99 Ill. App. 3d 382, but that case involved a situation where matters in the affidavits attached to a defendant's motion for summary judgment were not countered by the plaintiff. Since the instant defendant did not attach any matters to its motion which bore on the key issue of the tortfeasor's knowledge, the trial court was not in a position to resolve on summary judgment the question of whether the defendant's subrogation rights were actually prejudiced by the settlement. Since a question of fact remained on the issue of prejudice to those rights, the award of summary judgment cannot be sustained on the basis of plaintiff's alleged violation of the subrogation clause. See *Marsh v. Prestige Insurance Group* (1978), 58 Ill. App. 3d 894.

For the reasons stated, we conclude that the trial court erred in awarding summary judgment in favor of the defendant and, therefore, the judgment of the circuit court of Kane County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LINDBERG and NASH, JJ., concur.