MILBANK INSURANCE COMPANY, A FOREIGN CORPORATION,
APPELLEE, V. LILA L. HENRY ET AL., APPELLANTS.
441 N.W.2d 143

Filed June 9, 1989.   No. 86-489.

Raymond J. Walowski and J. Patrick Green for appellant Henry.

Daniel P. Chesire and Thomas D. Wulff, of Kennedy, Holland, DeLacy & Svoboda, for appellants Ammoura and Farmers Insurance Exchange.

Alan M. Thelen, of Breeling, Welling & Place, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

The plaintiff, Milbank Insurance Company, commenced this action in the county court to recover $1,000 which it had paid to the defendant Lila L. Henry under the medical payments coverage of an automobile liability insurance policy which the plaintiff had issued. Henry had been injured in an automobile accident in which an automobile operated by the defendant Housam M. Ammoura had collided with the automobile insured by the plaintiff and operated by Henry. The defendant Farmers Insurance Exchange was the liability insurance carrier for Ammoura.

After the plaintiff had paid Henry, the plaintiff wrote to Farmers to notify it that the plaintiff was subrogated to Henry's

cause of action against Ammoura. Farmers wrote back to the plaintiff stating that it did not honor subrogation claims for medical payments coverage in Nebraska. Later, Farmers entered into a settlement with Henry in the amount of $12,000 and took a general release from Henry of all claims arising out of the accident. The plaintiff then commenced this action against Henry, Ammoura, and Farmers to recover the $1,000 that it had paid to Henry.

The county court found in favor of the plaintiff and against all defendants. Upon appeal to the district court, the judgment was affirmed. The defendants have now appealed to this court.

The case was tried upon a stipulation of facts, and the issues are purely questions of law.

The policy which the plaintiff had issued and which insured the automobile that Henry was operating at the time of the accident contained the following provision:

5. OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do whatever is necessary to enable us to exercise our rights and shall do nothing after loss to prejudice them.

B. If we make a payment under this policy and the person, to or for whom payment is made recovers damages from another, that person shall hold in trust for us the proceeds of the recovery and shall reimburse us to the extent of our payment.

Henry contends that the subrogation clause in the policy issued by the plaintiff is not valid, at least as to payments made under medical payments coverage, for several reasons. Henry argues that it conflicts with the collateral source rule and the common-law rule against the assignment of personal injury claims. Henry concedes that there is a division of authority on the question and that it is probable that the majority of cases hold such clauses to be valid.

We think the better reasoned cases support the rule that such a subrogation clause is valid. Representative of such cases is *Travelers Indemnity Co. v. Vaccari*, 310 Minn. 97, 99-101, 245

N. W.2d 844, 845-46 (1976), in which the court held:

The insurance policy issued by Travelers provided that Travelers would be subrogated to the rights of any person to the extent of any medical payments made to that person. In National Union Fire Ins. Co. v. Grimes, 278 Minn. 45, 153 N. W. 2d 152 (1967), we upheld the validity of this type of subrogation clause as between the insurer and its insured, but specifically reserved ruling on the validity of the subrogation clause as against a third-party tortfeasor. We stated (278 Minn. 49, 153 N. W. 2d 155):

"If the present action were one in which plaintiff was attempting to assert a claim for the medical expenses paid by it against the tortfeasor who caused the injuries, the rules forbidding the assignment of claims for personal injuries might be applicable. But this is not such a situation and we need not anticipate it." We now hold that a subrogation clause of this kind which gives an insurer a right to subrogation against a third-party tortfeasor for medical payments actually made is a valid and enforceable contractual provision. It is well established as a principle of equity that upon payment of a loss an insurer is entitled to pursue those rights which the insured may have against a third party whose negligence or wrongful act caused the loss. Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co., 291 Minn. 97, 189 N. W. 2d 404 (1971). Applying this principle, the majority of jurisdictions have  upheld the validity of insurance provisions which confer on an insurer a right of subrogation against third-party tortfeasors for medical payments actually made to its insured.

We are not persuaded by Dairyland's argument that this type of subrogation clause constitutes an assignment of a cause of action for personal injuries. An insurer's subrogation to its insured's right of recovery against a tortfeasor is distinct from an assignment of a personal action. Subrogation involves the substitution of an insurer by operation of law to the rights of the insured because of the insurer's pre-existing duty to pay the insured for the

loss. In contrast, an assignment involves a transfer of a legal claim from an injured party to a volunteer who was under no pre-existing duty to compensate the injured party. Moreover, under subrogation an insurer's recovery is limited to the amount paid to the insured, whereas there is no such limitation on an assignee's recovery. Thus, subrogation simply does not create the same risk of maintenance or champerty as does assignment. See, DeCespedes v. Prudence Mutual Cas. Co., 193 So. 2d 224 (Fla. App. 1966).

In *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Anderson*, 48 Ala. App. 172, 175, 263 So.2d 149, 152 (1972), the court noted that Illinois, Minnesota, New York, and Washington have held that "[m]edical payments subrogation merely impresses an equitable lien in favor of the insurer upon the proceeds of any recovery obtained by the insured from the tort-feasor to·the extent of its payment." Michigan, Rhode Island, and Wisconsin have held that the right to medical pay subrogation is "based on contract; is not unfair or overreaching; and is accompanied by an appropriately reduced premium." Arkansas, the District of Columbia, Florida, New Jersey, North Carolina, Oregon, Pennsylvania, Tennessee, Utah, and West Virginia hold that a subrogation provision such as the one involved in this case "merely provides for conventional subrogation and does not ·constitute an assignment."

We conclude that the policy provision was valid and binding on Henry.

The defendants Ammoura and Farmers make much the same arguments. Further, they argue that since the release bars any action by Henry, the plaintiff cannot recover against them. The defendants overlook the fact that the settlement with Henry was made with notice of the plaintiff's subrogation claim.

When the plaintiff paid the medical payments claim to Henry, the plaintiff acquired an interest in Henry's claim against Ammoura under the subrogation clause in its policy. Since Farmers had notice of the plaintiff's subrogation claim, it could not destroy the plaintiff's interest by a settlement with

Henry alone. As we said in *Beeder v. Fleer*, 211 Neb. 294, 299, 318 N.W.2d 708, 711 (1982), a suit involving subrogation resulting from payment of a claim under collision coverage,

> After receiving notice from USAA that the appellee's claim for property damage to her automobile had been assigned or subrogated to it, Allstate was under a legal obligation to make payment to USAA and not to the appellee even though the action was pending in the name of the appellee, for the reason that USAA was then the real owner of the property damage claim for damages to appellee's automobile by reason of its subrogated interest.

In *Omaha & R. V. R. Co. v. Granite State Fire Ins. Co.*, 53 Neb. 514, 73 N.W. 950 (1898), the insurance company paid $1,000 on a fire loss and took a partial assignment of the owner's cause of action against the railroad. The property owner, Erickson, then sued the railroad for the balance of his loss. After the railroad had settled that suit, the insurance company sued for the amount of the loss it had paid to the property owner, and recovered. In affirming the judgment the court said:

> The railroad's answer in the Erickson suit was therefore good, and stated a valid defense; its abandonment of the defense and stipulation for judgment against it amounted then to a waiver of a good defense and a voluntary payment. Knowing, as it then knew, of the rights of the insurance company, it is not protected, by that voluntary payment of Erickson's claim, against a valid claim of the insurance company not included in that settlement. Its action was equivalent to express consent to a splitting of the cause of action, and it can claim no estoppel against the insurance company because it acted with full knowledge of its rights and of its intention to assert them.

*Id.* at 519-20, 73 N.W. at 951.

In *Travelers Indemnity Co. v. Vaccari*, 310 Minn. 97, 102-03, 245 N.W.2d 844, 847-48 (1976), the Minnesota Supreme Court held:

> In the instant case, Travelers informed both Vaccari and Dairyland of its subrogation interest. Despite notice of this interest, Vaccari and Dairyland settled with Travelers' insured, Mrs. Whaling, without heed to Travelers' claim,

and obtained a general release from her. Since, as a general rule, a subrogee is entitled to no greater rights than those which the subroger possesses, the question which then arises is whether the general release executed by Mrs. Whaling extinguished Travelers' subrogation claim.

While this court has previously indicated that "an insured may defeat the insurance company's rights of subrogation by * * * settling with the wrongdoer," we have never directly considered the issue of whether a settlement extinguishes an insurer's subrogation rights when that settlement is procured by a tortfeasor or his liability insurer *after* notice of the insurer's subrogation claim. The general rule in most jurisdictions is that when a tortfeasor or the tortfeasor's liability insurer, with notice of an insurer's subrogation claim, procures a general release by making a settlement with the insured, the release will not affect the insurer's right of subrogation. Vigilant Ins. Co. v. Bowman, 128 Ga. App. 872, 198 S. E. 2d 346 (1973); Transamerica Ins. Co. v. Barnes, 29 Utah 2d 101, 505 P. 2d 783 (1972); Hospital Serv. Corp. of Rhode Island v. Pennsylvania Ins. Co., 101 R. I. 708, 227 A. 2d 105 (1967). See, generally, Annotation, 92 A. L. R. 2d 102. Such a settlement is deemed to be the equivalent of a fraud upon the insurer and thus can have no effect upon the insurer's subrogation rights.

To hold that such a settlement destroys an insurer's subrogation rights would have the practical effect of encouraging a tortfeasor or his liability insurer to disregard notice of an insurer's valid subrogation claim and attempt to procure a general release from the insured. We believe that the tortfeasor and his liability insurer have a duty to act in good faith under such circumstances. Therefore, we hold that where a tortfeasor and his liability insurer willfully disregard notice of the subrogation claim of the injured person's insurer and enter into a separate settlement with the injured person, such a settlement does not defeat his insurer's subrogation rights.

In *Mutual Service v. American Family*, 140 Wis. 2d 555, 561, 410 N.W.2d 582, 584 (1987), an action to recover $2,000 paid

under medical payments coverage, the court said:

It is clear from our past cases that an insurer who pays a claim on behalf of its insured, under a policy providing for subrogation, has a cause of action against the tortfeasor and the tortfeasor's insurer for its subrogated interest. *See Associated Hospital Service v. Milwaukee Automobile Mutual Insurance Co.*, 33 Wis. 2d 170, 147 N.W.2d 225 (1967). In such a situation, we have characterized the interests of the insurer and the insured as each owning separately a part of the claim against the tortfeasor. *Heifetz v. Johnson*, 61 Wis. 2d 111, 120, 211 N.W.2d 834 (1973); *Wilmot v. Racine County*, 136 Wis. 2d 57, 63-64, 400 N.W.2d 917 (1987).

Because an insured and insurer each own separately part of the claim against the tortfeasor, a settlement or recovery by the insured operates to satisfy only the part of the claim owned by the insured. Because only the part of the claim owned by the insured is satisfied, the part of the claim owned by the insurer remains unsatisfied and may be sued upon by the insurer. Thus, when a tortfeasor's insurer and the injured party enter into a settlement which neither involves the subrogated insurer as a party to the settlement nor provides for the payment of the subrogated insurer's subrogated interest, the tortfeasor fails to satisfy the part of the claim owned by the subrogated insurer.

See, also, *Blue Cross v. Fireman's Fund*, 140 Wis. 2d 544, 411 N.W.2d 133 (1987); *Georgia Highway Express Inc. v. United Parcel Service, Inc.*, 164 Ga. App. 674, 297 S.E.2d 497 (1982); *Farm Bureau Mut. Ins. Co. v. Orr*, 379 N.W.2d 596 (Minn. App. 1985); *Gattorna v. American States Ins. Co.*, 122 Ill. App. 3d 582, 461 N.E.2d 675 (1984).

In this case, Farmers and its insured, Ammoura, had notice of the plaintiff's subrogation claim. The settlement with Henry did not destroy the plaintiff's claim, and the judgment must be affirmed.

AFFIRMED.

FAHRNBRUCH, J., dissenting.

I respectfully dissent. In my opinion, subrogation clauses make medical pay coverage illusory. I would hold that

subrogation clauses are unenforceable for the reason that they are against public policy.

In its opinion, the majority suggests that subrogation clauses are valid "based on contract" reasoning. The majority then upholds a medical pay subrogation clause on the theory that the insured has "bargained" for the clause, and therefore the courts should enforce it.

Realistically, there is no "bargaining" for a contract of insurance. As the U.S. Court of Appeals for the Eighth Circuit has stated:

> Insurance contracts are prime examples of "contracts of adhesion" where the customer is required to "adhere" to the standard contract form. Insurers, due to their greater bargaining position, should not be allowed to use this as a wholesale method for controlling applicable law. Consideration should be given all circumstances involved before placing much emphasis on formalistic ritual.

(Citations omitted.) *American Service Mutual Insurance Company v. Bottum*, 371 F.2d 6, 12 (8th Cir. 1967).

In construing insurance contracts, courts must remember

> it is also well settled that insurance contracts, as *contracts of adhesion, are subject to careful judicial scrutiny to avoid injury to the public.* In the consideration of adhesion contracts, *the courts have a heightened responsibility to prevent the marketing of policies that provide unrealistic and inadequate coverage.*
>
> Any portion of an insurance contract which is violative of public policy is not enforceable.

(Emphasis supplied.) (Citations omitted.) *Brown-Spaulding v. Intern. Surplus Lines,* 254 Cal. Rptr. 192, 194 (Cal. App. 3d 1988).

While a majority of jurisdictions permit insurance carriers to subrogate medical expenses, several jurisdictions have found subrogation clauses to be invalid. See, *Harleysville Mutual Insurance Company v. Lea*, 2 Ariz. App. 538, 410 P.2d 495 (1966); *Travelers Indemnity Company v. Chumbley*, 394 S.W.2d 418 (Mo. App. 1965); *Allstate Ins. Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978); *Maxwell v. Allstate Ins. Co.*, 102 Nev. 502, 728 P.2d 812 (1986); *Allstate Ins. Co. v. Reitler*, 628

P.2d 667 (Mont. 1981); *Wrightsman v. Hardware Dealers Mutual Fire Insurance Company*, 113 Ga. App. 306, 147 S.E.2d 860 (1966); *Peller v. Liberty Mut. Fire Ins. Co.*, 220 Cal. App. 2d 610, 34 Cal. Rptr. 41 (1963).

One reason a person buys insurance is to make certain that he is fully compensated for any injuries he receives. Where a medical pay clause in an automobile insurance policy requires that the insurer be reimbursed first from any money the insured receives by way of settlement or verdict from a tort-feasor, the insured may not be fully compensated for his medical expenses, let alone his injuries, pain, suffering, and loss of wages and earning capacity. This is in spite of the fact that there appears to be sufficient insurance to cover medical expenses and attorney fees.

In Nebraska, Neb. Rev. Stat. §§ 60-501 and 60-534 (Reissue 1988) requires liability insurance of only $25,000 for bodily injury or death of one person in one accident, or $50,000 for bodily injury or death of two or more persons in one accident. Assume, for the purpose of argument, that a nonnegligent injured person's automobile insurance policy includes medical coverage on the insured of $15,000. The insured incurs $31,675 in medical expenses and receives the $15,000 policy amount from his insurer. This nonnegligent person then obtains a verdict for $25,000 and collects that amount from the tort-feasor's insurer. The tort-feasor is otherwise judgment-proof. From the $25,000, the injured person must pay his own attorney $8,325 (one-third contingent fee) and must also reimburse his own insurance company $15,000, leaving him with $1,675. Add back the $15,000 the insured received from his own medical pay policy, and the insured nets $16,675. When that amount is deducted from the amount of medical expenses, the insured still owes $15,000 in medical bills. Even if the medical pay insurer paid its share of the attorney fee involved, the insured would still owe $10,000. If we would hold that the reimbursement clause in the insured's medical pay policy is void, the injured insured would net $31,675 and would at least be fully compensated for his medical expenses. As the law now stands, the injured person gains nothing from his medical pay policy, even though he has paid premiums for what

could be several years.

Another policy consideration exists for holding a reimbursement clause in a medical pay case invalid. In jury-tried or even bench-tried cases, the trier of fact must determine (1) whether the medical expenses specially pleaded are necessary and (2) if the charges therefore are reasonable. Perhaps the jury decides that some of the medical services provided were not necessary or the cost of them is unreasonable. The jury returns a general verdict. Without an additional lawsuit, how will it be determined what amount the medical pay insurer should be paid from the general verdict? Should the tort-feasor's insurance carrier have to litigate which portion of the general verdict should be paid to the medical pay carrier? No, the tort-feasor's insurance carrier simply claims that it is a stakeholder and pays the amount of the verdict into the court. If the tort-feasor settles with the plaintiff, it does so at its own peril if we hold the reimbursement clause to be valid. The medical pay insurer can hold up the settlement, and we still have a lawsuit. See *Hamilton v. Farmers Insurance*, 107 Wash. 2d 721, 733 P.2d 213 (1987). *Hamilton* is an underinsured case, but it dramatically reflects how a settlement can be undermined by an injured party's own insurance company. The Washington court did not permit that to happen in *Hamilton*.

Subrogation clauses make medical pay clauses illusory. The policy owner receives nothing for paying a separate premium for medical expense coverage when a tort-feasor is liable for his damages.

Under the majority opinion adopted today, insurance companies are given the unbridled right to include subrogation clauses in their adhesion contracts of insurance. I fear that it will not be long before the same types of clauses are placed in other types of medical attendance and hospitalization policies.

Public policy requires that insurance companies deliver what has been paid for by the insured and that the insured receives more than illusory coverage.

WHITE and GRANT, JJ., join in this dissent.