**WEST AMERICAN INSURANCE COMPANY, Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**No. Civ. 4–89–1089.**

United States District Court,
D. Minnesota,
Fourth Division.

March 19, 1991.

Mickey Greene, Bowman & Brooke, Minneapolis, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

West American Insurance Company (West American) brought this subrogation action against Ford Motor Company (Ford) for damages suffered by Melissa Lum, insured by West American, in an automobile accident. West American alleges that the 1983 Ford Escort in which Lum was a passenger at the time of the accident was defectively designed and that its defects caused her injuries. Before the court is Ford's motion for summary judgment on the basis of a release Lum signed following the accident.

### I.

The relevant facts are not disputed by the parties. During a snowstorm on December 2, 1984, on a curve on Highway 61 near Wabasha, Minnesota, a car driven by Tong Vang crossed the center line and collided with a Ford Escort driven by F. Douglass Warner. Passengers in the Vang vehicle were Tang Vang and Cher Vang. Passengers in the Warner vehicle were Warner's wife, Melissa Lum, and his mother, Joan Warner. Of the six persons involved, several were injured. Lum sustained fractures of three vertebrae in her back.

Lum and Douglass Warner were covered at the time by an insurance policy with West American. The policy provided for underinsured motorist coverage in the amount of $500,000. The vehicle operated by Tong Vang was covered by an insurance policy with State Farm Mutual Insurance (State Farm) with limits in the amount of $25,000 per person and $50,000 per accident. Lum and the Warners retained attorney Reed MacKenzie to represent them in connection with the injuries they received. All three made claims against Tong Vang and State Farm. On January 16, 1986, MacKenzie wrote a letter to West American advising them that it appeared both Lum's damages and those of Tang Vang in

Graham Heikes and Max Ramsey, Rice & Heikes, Minneapolis, Minn., for plaintiff.

the other vehicle would exceed the $25,000 State Farm policy limit. MacKenzie wrote:

> I have been in contact with the attorney who represents the occupants of the other vehicle. We have agreed that State Farm ought to pay its $50,000.00 policy and that in return, we will have our respective clients sign general releases. The $50,000.00 will then be placed in an escrow account until our clients' respective injuries have stabilized to the point where we can pro rate the fund according to their eligibility and injuries.

> \* \* \* \* \* \*

> I am informed there was also underinsured coverage on the other automobile through State Farm and that [the other attorney] will be proceeding in the same way on behalf of his clients.

> Obviously, we wanted to alert you to this plan to see if you have any problem with it or if you would propose any alternative resolution.

Christians aff., Exh. C. A claims representative for West American replied as follows on January 23, 1986:

> I do not believe we have any problem with the settlement and release plan, with the other company on Melissa Lum. However, I think we would first want to check out the assets of the other driver and owner.

> \* \* \* \* \* \*

> Would you also forward a copy of your expert's report or any information you have on the rear seat design in Mr. Warner's vehicle.

*Id.*, Exh. D.

State Farm tendered it policy limits to the claimants in the two vehicles. In June 1986, the claimants agreed to divide the proceeds as follows: $24,000 to Lum, $1,000 to Douglass Warner, $1,000 to Joan Warner, $24,000 to Tang Vang. On September 15, 1986, Lum executed the release which is at issue in this motion for summary judgment. Lum released all claims against Tong Vang "and all other persons, firms or corporations liable or, who might be claimed to be liable" for injuries relating to the accident. Lum aff., Exh. A. The release further stated:

> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

*Id.* The release was drafted by State Farm. Lum was represented by MacKenzie throughout her claim settlement.

In an affidavit submitted for this motion, Lum states that she did not intend to release Ford when she executed this release in 1986. She states:

> Prior to executing the Release, my attorney explained to me that I would be making a claim against West American for underinsured motorist benefits and that West American would be pursuing Ford Motor Company ("Ford") to recover benefits paid on my behalf.

> At the time I executed the Release, it was my understanding that I was releasing Vang and his insurer, State Farm. It was not my intent to release Ford from liability for its alleged negligence in designing and manufacturing the 1983 Ford Escort.

Lum aff., ¶¶ 6–7.

Lum's claim against West American for underinsured motorist benefits was arbitrated in December 1987, and Lum was awarded $300,000. In June 1988, Lum settled her claim against West American for a cash payment of $118,000 and a structured annuity payout costing $163,500. As part of the settlement, Lum executed a release on August 3, 1988, which stated that it released West American and all others from all her claims arising out of the accident, and also stated that she assigned to West American "any and all causes of action and claims for relief against Ford Motor Company, or any other third party, which is alleged, or may be alleged, to have

caused or contributed to the injuries she sustained arising out of the automobile accident on December 2, 1984." Greene aff., Exh. I. West American commenced this action against Ford on December 14, 1989, seeking to recover the amount of underinsured motorist benefits it paid to or on behalf of Lum.

## II.

Ford argues that it is entitled to summary judgment because the release executed by Lum in 1986 constituted a general release and included all potential claims against Ford. It argues that West American never acquired subrogation rights in Lum's potential claims against Ford because it failed to take action before execution of this general release.

West American responds that the 1986 release was not a general release because Lum did not intend to release Ford from potential liability, Lum had no authority under her insurance contract with West American to so release Ford, and the release would be inequitable. It contends that Lum's 1988 assignment of her rights against Ford confirms that releasing Ford was not her intent. West American also argues that its subrogation rights were not extinguished by the 1986 release because the release of one joint tortfeasor (Tong Vang) does not automatically release all tortfeasors, and, in the alternative, because it did not have sufficient notice of Lum's plan to execute the release.

Ford replies that the clear language of the 1986 release precludes consideration of extrinsic evidence of Lum's intent, and that Lum has failed to show that the release should be voided to allow West American's action against Ford to proceed. Ford contends that subrogation rights never arose because West American failed to protect such rights before Lum executed the release. Ford argues that Lum's possible failures of notice or authorization with regards to the release do not invalidate the

release but concern only Lum and West American. Finally, Ford argues that enforcing the release would not be inequitable since Lum has been compensated for her injuries and because West American failed to protect the subrogation rights it seeks to assert in this action.

## III.

■ On a motion for summary judgment, all material facts and inferences are construed in favor of the non-moving party. *AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987). To defeat a motion for summary judgment, however, the non-moving party must show through specific evidence that there are material facts in dispute creating a genuine issue for trial; it may not rest only upon the allegations or denials of its pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Minnesota law "presumes that parties to a release agreement intend what is expressed in a signed writing." *Sorensen v. Coast–To–Coast Stores,* 353 N.W.2d 666, 670 (Minn.Ct.App.1984); *see also Schmitt–Norton Ford, Inc. v. Ford Motor Co.,* 524 F.Supp. 1099, 1102 (D.Minn.1981). "A valid release is a defense to any action on the claims released." *Sorensen,* 353 N.W.2d at 669. A release is not valid "if the party executed the release under circumstances showing the release was not intended or if the party did not receive sufficient consideration." *Id.* In the present case, there is no dispute that Lum received sufficient consideration for executing the 1986 release. Further, if the release is valid, then West American does not have subrogation rights against Ford because West American did not protect its subrogation rights prior to the execution of the release by paying benefits to Lum or by substituting its check for the settlement check offered by the settling party, *see Schmidt v. Clothier,* 338 N.W.2d 256 (Minn.1983).[1] This

---

**1.** West American's arguments that Lum was not contractually authorized to execute the release and that she provided it with insufficient notice of the release are without merit. Under Minnesota law it is "well established that an insured

may defeat the insurance company's rights of subrogation by ... settling with the wrongdoer after loss but before payment of the insurance...." *Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.,* 291 Minn. 97, 189

motion turns on whether the undisputed material facts show that under the circumstances Lum did not intend to execute a general release in 1986.

 Consideration of five factors helps determine whether circumstances show a release should be invalid for lack of intent. *Sorensen,* 353 N.W.2d at 669–70. These five factors are:

1) The language of the release.
2) The presence or absence of legal counsel.
3) The existence of fraud or misrepresentation.
4) Wrongful concealment of facts or other wrongful conduct by the party obtaining the release.
5) Duress in signing the release.

*Id.* Consideration of these factors in the present case shows that the presumption of the validity of Lum's 1986 general release has not been overcome and summary judgment should be granted to Ford dismissing the complaint.

The first factor to consider is the language of the release. "The more complicated, confusing or misleading the language the more weight a court will give to a claim of no intent." *Id.* at 669. The release Lum executed is simple and straightforward. Its meaning is not couched in arcane legal jargon but readily understandable and unambiguous. Although Lum is not an experienced businessperson nor legally trained, she does hold a Ph.D. in veterinary microbiology, *see* Greene supp. aff., Exh. A; she could easily comprehend the terms of the release. The release includes Tong Vang and "all other persons, firms or corporations liable or, who might be claimed to be liable" for injuries relating to the accident. It states

that it is being executed "for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident." Such language cannot be disregarded or re-interpreted in the manner West American suggests if parties are to be able to rely on releases to settle their differences. "Courts generally engage in a presumption in favor of the validity of releases because the law favors settlement of disputes." *Schmitt–Norton, supra,* 524 F.Supp. at 1102. The first factor favors Ford's position that the release should be given its stated effect.

The second factor also supports the validity of the release. Lum was represented by able counsel throughout her claims process following the accident. MacKenzie worked on her behalf in relation to State Farm, West American, and the other occupants of the two vehicles. He informed West American that she was planning to execute a general release unless West American objected. "The presence of counsel is a strong factor indicating intent." *Sorensen,* 353 N.W.2d at 669. Here that factor weighs in favor of upholding the release.

 The remaining three factors can be considered together, namely fraud, misrepresentation, wrongful concealment and duress. West American does not allege that State Farm procured the release by any of these means. At most, West American asserts that Lum made a unilateral mistake of fact when she executed the release. In her recent affidavit, Lum states that she did not intend to release Ford in 1986 and that her attorney told her West American would still be pursuing Ford to recover benefits paid on her behalf. Construing the evidence most favorably to West American on this motion for summary judgment,

N.W.2d 404, 406–07 (1971). As to sufficient notice, the issue is between the injured party and her or his insurer. Insufficient notice does not invalidate the release signed by the injured party. *See Fladager v. Farm Bureau Mutual Ins. Co.,* 414 N.W.2d 551 (Minn.Ct.App.1987).

West American's arguments that upholding the validity of the release would be inequitable and that the release of one joint tortfeasor does not automatically release all tortfeasors are similarly unpersuasive. There is no inequity here

where the injured person has already been compensated, and where West American consented to what it knew was a general release, *see* letter of Reed MacKenzie (January 16, 1986), letter of West American (January 23, 1986). Whether Lum released only one or all tortfeasors in 1986 is really the same question considered in the text, *infra.* Ford is not arguing that Lum released only one tortfeasor and thereby "automatically" released all others; Ford contends that Lum executed a *general* release.

the facts do not provide any indication that *State Farm* engaged in fraud, misrepresentation, wrongful concealment or duress. On the contrary, it is State Farm's stated policy in protecting the interests of its insureds to require general releases. As stated by Peter Grottodden, a Bodily Injury Superintendent with State Farm:

> It is the standard and absolute policy of State Farm in the settlement of bodily injury claims against its insureds to obtain releases that protect the insureds from potential claims for contribution by other potential tortfeasors.... State Farm requires that the adverse parties execute general releases of all claims against State Farm's insureds and all other persons, firms and corporations. By using a general release, State Farm's insured is also protected from potential contribution claims because the release acts to release all of the adverse parties' claims.

Grottodden aff., ¶ 2. The release executed by Lum was "a standard general release form" used by State Farm in furtherance of this policy. *Id.* at ¶ 3. Even if Lum did not intend to execute such a general release, there is no evidence that there was any wrongdoing by State Farm in procuring it. "Unilateral mistake concerning the effect of a release is not a basis for setting it aside unless there is evidence that the other party obtained the release by fraud, misrepresentation, or other inequitable conduct." *Schmitt–Norton*, 524 F.Supp. at 1104. With no evidence of wrongful conduct by State Farm in this case, the final three *Sorensen* factors also weigh in favor of upholding the release.[2]

There are no disputed material facts as to any of the five *Sorensen* factors. Ford's motion for summary judgment should be granted.

### ORDER

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that the motion by defendant Ford Motor Company for summary judgment is granted.

---

**2.** The purported assignment by Lum of her rights against Ford in 1988 was ineffective to create any right in West American. Lum's exe-cution of a valid general release in 1986 left her with no rights to assign.